**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UBALDO FIGUEROA-RODRÍGUEZ,

Plaintiff,

v.

EDGARDO RODRÍGUEZ-RIVERA, in his personal capacity, ELIEZER RAMOS-PARES as Secretary of the Puerto Rico Department of Education, PUERTO RICO DEPARTMENT OF EDUCATION, COMMONWEALTH OF PUERTO RICO, and JOHN DOES 1-5, in their personal capacities,

Defendants.

**Civil No. 25-1492 (GMM)**

**OPINION AND ORDER**

Before the Court is a *Motion to Dismiss Pursuant to Rule 12(b)(6)* ("*Motion to Dismiss*") filed on behalf of all Defendants. (Docket No. 11). For the reasons outlined below, the Court **GRANTS IN PART AND DENIES IN PART** the *Motion to Dismiss*.

## I. BACKGROUND

Ubaldo Figueroa-Rodríguez ("Mr. Figueroa" or "Plaintiff") was a theater professor for nearly thirty years with the Puerto Rico Department of Education ("PRDE"). (Docket No. 1 at 3). He was terminated in 2023. (Id.). Mr. Figueroa challenged his dismissal and won. (Id. at 4). This lawsuit flows from the remnants of that dispute.

Mr. Figueroa filed an administrative appeal before the Comisión Apelativa del Servicio Público ("CASP"), or the Public Service Appeals Commission, shortly after his termination. (Id.). On November 27, 2024, CASP issued a final award in Mr. Figueroa's favor, ordering his reinstatement plus backpay and other benefits. (Id.). He alleges that the award became final without PRDE seeking review. (Id.).

On July 23, 2025, nearly eight months after the award, PRDE issued payment to Mr. Figueroa in the amount of $85,436.80 for backpay and $1,024.20 in Christmas bonuses. (Id. at 5). Mr. Figueroa contends that Edgardo Rodríguez-Rivera ("Mr. Rodríguez"), the Regional Director of Human Resources for the San Juan Educational Region, refused to carry out CASP's order until shortly before August 8, 2025, when Mr. Figueroa alleges he was notified of his reinstatement. (Id. at 4-5). He alleges that Mr. Rodríguez was tasked with implementing the award, knew of it, and refused to act despite repeated requests for reinstatement. (Id. at 4).

Mr. Figueroa attributes significant financial harm to the delay in reinstatement following the CASP award. He alleges being forced to prematurely withdraw funds from his retirement savings account. (Id. at 5). The *Complaint* describes the withdrawal as occurring sometime between his 2023 dismissal and eventual reinstatement; it does not specify when during that period he withdrew the funds. (Id.). This came with a hefty tax penalty and

permanent ineligibility for a monthly retirement annuity he would have had otherwise. (Id.). Cumulatively, this financial hardship induced emotional distress, reputational harm, and other related damages. (Id. at 6).

On September 15, 2025, Mr. Figueroa filed the *Complaint*. Counts I and II assert a Section 1983 procedural due process and equal protection claim against Mr. Rodríguez in his personal capacity. (Id. at 5–7). Count III brings an Equal Pay Act claim against PRDE based on an alleged practice of reinstating female employees more promptly than male employees following favorable CASP awards. (Id. at 7–8). Counts IV and V request additional compensatory and punitive damages arising from the alleged constitutional violation. (Id. at 8–10). Secretary Eliezer Ramos-Parés ("Secretary Ramos") is sued solely in his official capacity for prospective or declaratory relief, and the *Complaint* also names PRDE, the Commonwealth, and John Does 1–5 in their personal capacities. (Id. at 2–3).

All Defendants filed their *Motion to Dismiss* on December 1, 2025. (Docket No. 11). Defendants aver that this case should be halted under Younger abstention because the CASP administrative proceedings are still ongoing. (Id. at 5-10). If the Court exercises its jurisdiction notwithstanding Younger, Defendants challenge Mr. Figueroa's claims on the merits as well. Defendants contend that injunctive relief is improperly pled and should

therefore be set aside. (Id. at 10-11). On top of that, Defendants argue that Mr. Figueroa neither states an Equal Pay Act claim against PRDE nor a due process or equal protection claim against Mr. Rodríguez. (Id. at 11-18). To support their contentions, Defendants ask this Court to look at two documents: the November 27, 2024 CASP award, and a CASP certification of compliance dated November 20, 2025. (Docket Nos. 18-1, 18-2).

Mr. Figueroa filed a *Response to Motion to Dismiss* ("*Response*") on December 19, 2025. (Docket No. 15). He argued that Younger abstention is inapplicable because the substantive claims have been fully adjudicated and the relief sought in this Court is different. (Id. at 2-5). Mr. Figueroa otherwise reaffirms that he stated a valid procedural due process and class-of-one equal protection claim against Mr. Rodríguez. (Id. at 5-11). Mr. Figueroa concedes that he is not bringing a liability claim against the government under Section 1983. (Id. at 13). Even so, Mr. Figueroa asserts he has sufficiently pled intentional actions taken by Mr. Rodríguez that warrant liability under Section 1983 and should not be shielded by qualified immunity. (Id. at 12-13). Lastly, Mr. Figueroa argues that the Court should not consider the second exhibit, PRDE's certification of compliance, appended to the *Motion to Dismiss* because it is not central to his claims. (Id. at 14). Mr. Figueroa does not reassert his Equal Pay Act claim. *See generally* (id.).

Defendants filed their *Reply to Plaintiff's Response to Defendants' Motion to Dismiss* on January 16, 2026, reiterating their arguments. (Docket No. 21).

The above matters are now fully briefed and ripe for disposition.

## II. LEGAL STANDARD

Defendants may move to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). This motion tests the legal sufficiency of the complaint, not the merits. A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). To survive dismissal, a complaint must state a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Courts accept well-pleaded facts as true but disregard legal conclusions and conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion, the court ordinarily considers the complaint, documents incorporated into it or central to the claim whose authenticity is not disputed, and matters properly subject to judicial notice. Sierra v. Bisignano, 158 F.4th 43, 49 (1st Cir. 2025).

## III. DISCUSSION

Defendants state that this Court should refrain from exercising its jurisdiction because Mr. Figueroa's claims fall under Younger abstention. Notwithstanding, Defendants also argue that Mr. Figueroa fails to state any claim on the merits. These arguments succeed and fail at various points.

### A. Claims Against the Commonwealth, PRDE, and the Secretary

Mr. Figueroa sues Secretary Ramos, PRDE, the Commonwealth of Puerto Rico, and John Does 1-5.[1] *See generally* (Docket No. 1). Mr. Figueroa disclaims Section 1983 liability against the governmental defendants. (Docket No. 15 at 12). The *Complaint* separately asserts an Equal Pay Act claim against PRDE, which the Court addresses in Section III.E. Apart from that claim, remedies cannot lie against these Defendants for numerous reasons.

Immunity against damages claims is the first issue. The Commonwealth of Puerto Rico is a state equivalent for Eleventh Amendment purposes, and PRDE has repeatedly been treated by the First Circuit as an arm of the Commonwealth. Díaz-Fonseca v. Commonwealth of Puerto Rico, 451 F.3d 13, 33-34 (1st Cir. 2006). That means both entities are protected by sovereign immunity unless

---

[1] Although the use of fictitious names to identify defendants is not favored, situations may arise where the identity of an alleged defendant cannot be known prior to the filing of a complaint. *See* Martínez-Rivera v. Ramos, 498 F.3d 3, 8 (1st Cir. 2007). If, through discovery, Mr. Figueroa discovers the true names of the "John Doe" defendants, and if those defendants pertain to the remaining claims, he "should act promptly to amend the complaint to substitute the correct parties and to dismiss any baseless claims." Id. at 8 n.5.

explicitly waived. Id. While Section 1983 may provide an avenue for suit against "persons" acting under color of law, a state or state officials sued in their official capacities for damages are not "persons" contemplated by Section 1983. *See generally* Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Accordingly, neither the Commonwealth, Secretary Ramos, nor PRDE is a "person" subject to damages liability under that statute.

The Equal Pay Act claim is asserted only against PRDE. Because that claim fails on its pleaded elements for the reasons set out in Section III.E of this opinion, the Court need not decide whether sovereign immunity independently bars it.[2]

Immunity against this form of injunctive relief is also an issue. Sovereign immunity generally bars injunctive suit against states and state agencies. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984). However, Ex parte Young, 209 U.S. 123 (1908), permits prospective relief against a state official in his official capacity for an ongoing violation of federal law. Cotto v. Campbell, 126 F.4th 761, 767-68 (1st Cir. 2025). The *Complaint* alleges that Mr. Figueroa has been reinstated and seeks compensation for asserted past injuries. (Docket No. 1 at 5, 8-11). But restorative relief is foreclosed in the First Circuit. *See* Whalen v. Mass. Trial Ct., 397 F.3d 19, 29-30 (1st

[2] The First Circuit has not clearly weighed in on whether the Equal Pay Act abrogates sovereign immunity. *See* Jusino Mercado v. Commonwealth of Puerto Rico, 214 F.3d 34, 36 n.1 (1st Cir. 2000).

Cir. 1005). Other than this prayer for relief, the *Complaint* identifies no ongoing federal violation or specific prospective relief that Secretary Ramos could provide. Ex parte Young, therefore, does not authorize a suit against Secretary Ramos, PRDE, or the Commonwealth in this way.

Accordingly, the Section 1983 claims against the Commonwealth and PRDE, and the request for injunctive or declaratory relief against Secretary Ramos, are **DISMISSED** with prejudice.

B. Younger Abstention

Now, turning to the request for abstention. Defendants urge this Court to refrain from exercising its jurisdiction per Younger abstention because the CASP proceedings are ongoing.[3] (Docket No. 11 at 5-10). Mr. Figueroa disputes that Younger is relevant: Plaintiff argues he retained a final favorable award on November 27, 2024, and what remains involves compliance and collateral benefits, such as sick pay and social security benefits. (Docket No. 15 at 2-5).

Resolving this question requires some unpacking of the Younger doctrine. Generally, the pendency of a state-court action does not preclude a federal court from addressing that same subject

---

[3] To answer this question, the Court looks at the CASP proceedings' documents, despite Plaintiff's exhortations. These documents are central to Plaintiff's claim, and their authenticity is not disputed. Freeman v. Town of Hudson, 714 F.3d 29, 36-37 (1st Cir. 2013). In looking to these documents, the Court continues to construe all facts in the light most favorable to Plaintiff, as Rule 12(b)(6) demands.

matter. *See* Co. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976). This is because a federal court's "obligation" to hear and decide a case is "virtually unflagging" if jurisdiction exists. Id. Certain exceptions, however, were carved out over the years. One such exception arose in Younger v. Harris, 401 U.S. 37 (1971). There, the Supreme Court called for federal courts to abstain from interfering with certain state proceedings. Id. at 43-46. The scope of this abstention was refined in Sprint Commc'ns, Inc. v. Jacobs to three categories: criminal prosecutions, civil enforcement proceedings akin to criminal prosecutions, and proceedings implicating a state court's ability to perform its judicial functions. 571 U.S. 69, 78 (2013). The state proceedings in these categories were "exceptional," the Supreme Court clarified: the overarching rule to not abdicating one's authority to rule over a jurisdictionally proper proceeding remains unflagging. Id. at 73.

Since Sprint, the First Circuit has added its own gloss to this test. A court must first "ascertain whether a particular state proceeding falls within the Younger taxonomy." Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192–93 (1st Cir. 2015). If so, then the Court must assess whether the state proceeding is ongoing, implicates important state interests, and provides an adequate opportunity to raise federal defenses. Id. at 192 (*citing* Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432

(1982)). If both steps point toward abstention, the court must finally determine whether any other exception to Younger would apply - such as bad faith, patent unconstitutionality of an underlying state law, or an inadequate state forum - that counsel against abstention. Id. at 192-93.

Having set the doctrinal backdrop, the Court understands that Defendants' Younger arguments fall at the first step. Even assuming that proceedings concerning compliance with the CASP award remain pending,[4] they were initiated by Mr. Figueroa to obtain a remedy for his dismissal. Defendants identify no coercive enforcement action initiated by the Commonwealth against him and no interference with a state court's ability to perform its judicial functions.

Plainly, those proceedings are remedial in nature and 'not of the type to which deference under Younger applies.'" Casiano-Montanez v. State Ins. Fund Corp., 707 F.3d 124, 128 (1st Cir. 2013) (*quoting* Guillemard-Ginorio v. Contreras-Gómez, 585 F.3d 508, 522 (1st Cir. 2009)). What's more, Younger abstention has only been narrowed since the First Circuit ruled in Casiano-Montañez that these remedial proceedings do not fit Younger's bill. If CASP-like proceedings did not qualify for Younger in 2013,

[4] Courts "can take judicial notice of what information was available on government websites at a particular time." Rodrique v. Hearst Commc'ns, Inc., 126 F.4th 85, 93 n.3 (1st Cir. 2025). The status of the CASP proceedings is available online: https://casp-app.net/cases/37331/public/.

Sprint's later articulation of Younger's limited scope reinforces that conclusion.

Accordingly, the Court need not delve further into Younger to determine that abstention is inappropriate.

C. Procedural Due Process

Exercising its jurisdiction, as it must, the Court turns to the merits of Mr. Figueroa's arguments. Plaintiff alleges that Mr. Rodríguez deprived him of his lawful reinstatement for nearly eight months, depriving him of his property interest without due process. (Docket No. 1 at 6). Mr. Rodríguez, in turn, avers that Plaintiff at most describes a delay, and not denial, of his interests, and identifies no process he was denied. (Docket No. 11 at 16).

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S Const. amend. XIV, § 1. This amendment encompasses both substantive and procedural due process guarantees. For a procedural due process claim to lie, the Court must first identify whether Plaintiff possesses a legally protected property right. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008). After identifying that right, Plaintiff bears the burden of proving that deprivation occurred. Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 4 (1st Cir. 2012). This deprivation must be higher than negligence; "mere lack of due care"

will not suffice. *See* Daniels v. Williams, 474 U.S. 327, 330–31 (1986).

Once a right - and its loss - is identified, procedural due process entitles parties to notice and an opportunity to be heard. Fuentes v. Shevin, 407 U.S. 67, 80 (1972). However, "due process is flexible" and is assessed on a case-by-case basis. Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

As relevant to Mr. Figueroa's public employment, constitutional procedural due process protects only those aspects caselaw has recognized as property interests. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). Puerto Rico law guides defining such interests. Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003). The First Circuit has held that a lawfully appointed Puerto Rico career employee has a protected property interest in continued employment. Colón-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006).

Here, Plaintiff does not seek review of the merits of his 2023 dismissal. CASP resolved that dispute in his favor. He alleges instead that Mr. Rodríguez, the official charged with implementing the resulting award, knew of the order and refused, without lawful justification, to reinstate him despite repeated requests. (Docket No. 1 at 4 ¶¶ 12–17, 6 ¶¶ 25–29). Eventual reinstatement and a backpay payment do not themselves establish that Plaintiff

experienced no deprivation during the intervening period. The question is whether the alleged refusal to carry out the award also deprived him of constitutionally adequate process. In other words, "[t]he crucial question [then] becomes: what process was due? This is an issue of federal law." Torres-Rosado, 335 F.3d at 10 (*citing* Loudermill, 470 U.S. at 541).

The First Circuit's decisions in Roy v. City of Augusta, 712 F.2d 1517 (1st Cir. 1983), and Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996 (1st Cir. 1992), bear on this question. Rumford Pharmacy rejected a due process claim based on an eight-month delay in processing a license application because the complaint did not allege that available state remedies were constitutionally inadequate. 970 F.2d at 999-1000. Roy allowed a claim to proceed where officials allegedly frustrated a favorable judgment by issuing an expired license that denied the plaintiff the practical benefit of the judgment. 712 F.2d at 1522-24. The concern in Roy was an alleged deliberate subversion of the process the state had provided.

This case differs from Roy: CASP issued an administrative award, whereas Roy involved a state-court judgment in tandem with an administrative decision. As was pivotal in Rumford Pharmacy, the *Complaint* here also does not allege that every means of seeking

compliance was unavailable or constitutionally inadequate.[5] Those differences may prove consequential. Yet Plaintiff alleges that CASP ordered reinstatement, the award became final without review, and Mr. Rodríguez was responsible for implementing it but knowingly refused to do so despite repeated requests and without lawful justification. (Docket No. 1 at 4 ¶¶ 12-19, 6 ¶¶ 25-29). Construed in Plaintiff's favor, those allegations may permit a narrow inference that Mr. Rodríguez frustrated the result of the process Plaintiff obtained. Whether the award required the action attributed to him, whether there was a reasonable basis for the time taken to implement it, and whether available enforcement procedures afforded constitutionally adequate redress cannot be resolved on the *Complaint* alone.[6]

---

[5] At first blush, it seems here that the available state remedies may have been sufficient. Assuming arguendo again a right exists to timely backpay, Plaintiff took advantage of the principal state-level processes to preserve that right: he appealed, litigated before CASP, won a final order, and continues to litigate ongoing CASP proceedings regarding collateral benefits. Though Plaintiff alleges that there was no adequate state post-deprivation remedy available since Mr. Rodríguez did not comply with the initial CASP order, (Docket Nos. 1 at 6; 15 at 7), the pleaded facts point in the other direction to some degree: they show that CASP remained available to enforce compliance and Plaintiff indeed is pursuing said enforcement mechanism. (Docket No. 15 at 4).

[6] The duration of the delay does not independently establish a constitutional violation. Loudermill and Mallen addressed the timeliness of adjudicative procedures prior to judgment, whereas CASP had already rendered its decision here. *See* Loudermill, 470 U.S. at 546-47; Fed. Deposit Ins. Corp. v. Mallen, 486 U.S. 230, 242-43 (1988). Neither case establishes that every delay in implementing an administrative award violates due process. All the same, in considering whether some form of delay was improper, courts may weigh the private interest and harm caused by the delay, the government's justification for that delay, and whether the government's interim determination was erroneous. Mallen, 486 U.S. at 242. In Mr. Figueroa's case, the post-deprivation CASP proceedings are ongoing. These state proceedings do not define what process is due federally, but they may shed light on the full picture informing the alleged intentional delay. *See* Loudermill, 470 U.S. at 541. Therefore, while

The *Motion to Dismiss* Count I against Mr. Rodríguez in his personal capacity is **DENIED** on the limited theory described above.

D. Equal Protection

Next, equal protection. Mr. Figueroa alleges that Mr. Rodríguez's deprivation of his timely reinstatement constituted disparate treatment as compared to other PRDE employees who in part prevailed in CASP proceedings under a class-of-one theory.[7] (Docket Nos. 1 at 6-7; 15 at 8-9). Mr. Rodríguez chalks these allegations up as vague and conclusory. (Docket No. 11 at 17). The Court agrees.

Alongside due process, the Fourteenth Amendment also provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S Const. amend. XIV, § 1. In short, this clause "keeps governmental decisionmakers from

---

Mr. Figueroa's pleadings are somewhat deficient in establishing what more procedures may have protected him from erroneous delay, he has alleged enough at the 12(b)(6) stage to survive dismissal as to this claim.

[7] The Court notes that Mr. Figueroa's *Complaint* speaks of retaliation under his equal protection claim, whereas his response to the *Motion to Dismiss* refines his equal protection argument to a class-of-one theory. The Court reviews Mr. Figueroa's claim under his later class-of-one clarification. To the extent Mr. Figueroa continues to also plead retaliation under this claim, it is unavailing. His allegations do not identify the actions for which Mr. Rodríguez allegedly retaliated. Insofar as the retaliation is allegedly related to protected speech or petition, then more facts would need to be pleaded to assess the matter properly under the proper framework. However, the Court understands that Mr. Figueroa suggests Mr. Rodríguez acted vindictively because he successfully challenged his dismissal via CASP proceedings. Calling the alleged conduct "retaliation" does not itself state a separate equal protection claim or avoid the requirements in Engquist v. Or. Dep't of Agric., 553 U.S. 591 (2008). The Court does not decide on an unpleaded First Amendment retaliation claim.

treating differently [people] who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Under the equal protection framework, a plaintiff must allege: (1) selective treatment compared to others similarly situated; and (2) that the challenged governmental action was based on a protected characteristic. *See* Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 68 (1st Cir. 2015). "Suspect" classifications are subject to heightened scrutiny. Cook v. Gates, 528 F.3d 42, 61 (1st Cir. 2008); Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (identifying suspect classes as those subject to selective treatment based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person"). Non-suspect classifications receive lesser scrutiny; they survive so long as the state action is rationally related to a legitimate governmental interest. *See* Cook, 528 F.3d at 61. This is a very deferential standard. Beauchamp v. Murphy, 37 F.3d 700, 707 (1st Cir. 1994).

A "class of one" equal protection claim could also exist "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated," which is also given rational basis review. Zell v. Ricci, 957 F.3d 1, 13 (1st Cir. 2020). To do so, class-of-one plaintiffs must "identify

comparators who are similarly situated in all respects relevant to the challenged government action." Back Beach Neighbors Comm. v. Town of Rockport, 63 F.4th 126, 130–31 (1st Cir. 2023) (citation modified) (*quoting* McCoy v. Town of Pittsfield, 59 F.4th 497, 507 (1st Cir. 2023)). Comparators must share an "extremely high degree of similarity." Id. at 131. Class-of-one theories, however, are unavailable in the context of public employees. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 607 (2008).

Under any equal protection theory, Plaintiff's equal protection claim "must outline facts sufficient to convey specific instances of unlawful discrimination." Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (citation modified). Simply "asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by a discriminatory animus" will not do. Id. (citation modified).

Count II challenges a public employer's handling of Plaintiff's reinstatement and, as clarified in his *Reply*, proceeds on a class-of-one theory. As stated, Engquist forecloses that theory in the public employment context. 553 U.S. at 594, 607. Independently, the *Complaint* provides no facts describing the circumstances of other employees' awards, reinstatements, or treatment by the relevant decisionmaker that permit a plausible comparison. (Docket No. 1 at 6-7 ¶¶ 32–35). The absence of material comparative facts is dispositive.

Without more, the Court must **DISMISS** this claim.

E. Equal Pay Act

Mr. Figueroa's Equal Pay Act argument fares no better. Plaintiff sues PRDE challenging their "pattern or practice of reinstating female employees more promptly and with fewer delays than their male counterparts, despite identical legal entitlements following successful administrative appeals." (Docket No. 1 at 8). Defendants argue that this allegation falls outside of the Equal Pay Act's scope, and Plaintiff has already received full backpay and Christmas bonuses. (Docket No. 11 at 11-14).

The Equal Pay Act prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To prove this claim, Plaintiff "must make a prima facie showing that the employer paid different wages to an employee of the opposite sex for substantially equal work." Byrd v. Ronayne, 61 F.3d 1026, 1033 (1st Cir. 1995) (*citing* Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). Once established, the burden shifts to the defendant to provide one of four affirmative defenses. Ingram v. Brink's, Inc., 414 F.3d 222, 232 (1st Cir. 2005).

The *Complaint* alleges that female employees who prevailed in administrative appeals were reinstated, paid more promptly, and

that disparities extended to the timing and completeness of payments. (Docket No. 1 at 8 ¶¶ 42-45). Accepting those allegations as true, Plaintiff does not describe substantially equal work performed by a female employee who received a higher wage rate or plead other facts permitting a plausible inference of a wage disparity prohibited by Section 206(d)(1).[8] Characterizing the delay as a "constructive pay disparity" does not supply the missing comparison. (Id. at 8 ¶ 45). Count III therefore fails to state an Equal Pay Act claim.

The alleged delay in reinstatement and payment, however harmful, does not itself establish that PRDE paid Plaintiff less than an employee of the opposite sex for substantially equal work.

Count III against PRDE is **DISMISSED.**

## V. CONCLUSION

For the reasons explained above, the *Motion to Dismiss* is **DENIED** as to Count I against Mr. Rodríguez in his personal capacity and **GRANTED** as to Count II against him and Count III against PRDE. All claims against PRDE, Secretary Ramos, and the Commonwealth of Puerto Rico are **DISMISSED.** Partial judgment shall be entered

[8] Mr. Figueroa suggests in his *Complaint* that he does not have any information about pay differentials between men and women performing substantially similar work. *See* (Docket No. 1 at 8). Moreover, he does not contest the amount of his wages as being less or more than others, nor does he aver that his backpay and Christmas bonuses were miscalculated or unsatisfactory in any way. *See generally* (Docket Nos. 1, 15).

accordingly. As to the remaining claim, Parties shall file a proposed case management order and discovery plan on or before October 23, 2026.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on September 30, 2026.

/s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE